UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LISA ESSER, | CIV. 08-4004-KES |
| Plaintiff, | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| TEXAS ROADHOUSE MANAGEMENT CORP., a limited liability company; and MURRAY WELDER, an individual, | |
| Defendants. | |

Defendants, Texas Roadhouse Management Corp. and Murray Welder, move for summary judgment. Plaintiff, Lisa Esser, opposes defendants' motion. For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

**FACTUAL BACKGROUND**

Viewed in the light most favorable to Esser, the nonmoving party, the facts are as follows:

Esser worked at the Texas Roadhouse in Sioux Falls as a service manager, and some of her duties included overseeing the hosts and wait-staff. Murray Welder was Esser's immediate supervisor and the manager of the Texas Roadhouse. Tom Scheel was the managers' supervisor.

The female employees of Texas Roadhouse routinely complained to Esser about Welder's behavior and comments. (Docket 38-2, Ex. 1 at 10.)

Esser also witnessed some of Welder's actions and heard some of his comments about the female employees. (Id. at 8-10.) On one occasion, Welder said that Esser needed to show more cleavage and proceeded to pull down Esser's shirt. (Id. at 10.)

On August 11, 2006, an employee, Cecelia Gerdes, complained to Esser about Welder's behavior, which included him repeatedly touching Gerdes's thigh with his hand. (Id. at 6.) On August 15, 2006, Esser went to Scheel and informed him of what she had been told. (Id. at 7.) Scheel fired Esser on August 18, 2006.

Esser filed a formal complaint with the Equal Employment Opportunity Commission on February 7, 2007. (Docket 49-9, Ex. G.) On October 12, 2007, Esser received her "Right to Sue" letter and filed suit in a timely manner. (Docket 49-12, Ex. J.)

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute

2

about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

In determining whether a genuine issue for trial exists, the court applies the standard and burden associated with the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]").

While this case is before the court under Title VII of the Civil Rights Act of 1964, South Dakota substantive law applies to the ancillary state-law claims involving the South Dakota Human Relations Act, SDCL 20-13-1, et seq., intentional infliction of emotional distress, negligent infliction of

3

emotional distress, breach of contract, and punitive damages because those causes of action arise under South Dakota law. See Witzman v. Gross, 148 F.3d 988, 990 (8th Cir. 1998) (citing United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)).

**DISCUSSION**

**I.    Counts 1 & 2: Sexual Harassment/Hostile Work Environment**

Defendants argue that Esser failed to exhaust her administrative remedies by not alleging sexual harassment in her administrative charge. "A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court." Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006). See also Montgomery v. Big Thunder Gold Mine, Inc., 531 N.W.2d 577 (S.D. 1995) (recognizing that sexual harassment claims must first be filed with the South Dakota Division of Human Rights in order to exhaust administrative remedies). Esser admits she did not allege sexual harassment in her administrative charge. (Docket 38-2, Ex. 1 at 12; Docket 49-9, Ex. G.) And Esser did not respond to the argument that her sexual harassment claims were not administratively exhausted. Because Esser did not respond to this argument, and because the administrative charge does not include an allegation of sexual harassment, defendants' motion for summary judgment is granted with regard to Counts 1 and 2.

**II.     Counts 3 and 4: Retaliation Claims**

   **A.     Esser's Retaliation Claims Against Welder**

Defendants argue that Welder cannot be liable for any retaliation claims because he was only Esser's supervisor and because he had no role in Esser's termination. Esser argues that a supervisor may be liable under Title VII and SDCL 20-13-10.[1]

The Eighth Circuit Court of Appeals " 'has squarely held that supervisors may not be held individually liable under Title VII.' " Bales v. Wal-Mart Stores, Inc., 143 F.3d 1103, 1111 (8th Cir. 1998) (quoting Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist., 121 F.3d 446, 447 (8th Cir. 1997)). Thus, Welder cannot be liable under Title VII because he was only Esser's supervisor.

As to Esser's claim of retaliation under SDCL 20-13-10, however, "the South Dakota Supreme Court would likely find that SDCL 20-13-10 creates individual liability for a supervisor." Johnson v. Gateway, Inc., 2007 WL 1231657, at 11 (D.S.D. Apr. 24, 2007) (noting the use of the word "person"

---

[1] This statute reads as follows:

> It is an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, disability or national origin, to fail or refuse to hire, to discharge an employee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff or any term or condition of employment.

SDCL 20-13-10.

5

instead of "employer" in the state statute and the fact that each term was defined differently). Nonetheless, defendants argue that Welder cannot be liable for Esser's retaliatory termination claim because he had no role in Esser's termination. (Defs.' Statement of Undisputed Material Facts, Docket 36, at 7; Docket 38-3, Ex. 2 at 11; Docket 38-4, Ex. 3 at 3.) Esser has not refuted, or otherwise responded to, this argument. Thus, based on the undisputed facts in this case, Welder cannot be liable for Esser's claim of retaliatory termination because he had nothing to do with the decision to terminate Esser. Accordingly, defendants' motion for summary judgment is granted with regard to the retaliatory termination claims against Welder.

### B. Esser's Retaliation Claims Against Texas Roadhouse

Defendants argue that Esser's retaliation claims against Texas Roadhouse must fail because there is no evidence that her termination was caused by her reporting the sexual harassment claims. Defendants also argue that even if she can show causation, the real reason for her termination was because Scheel believed that she made a false report about sexual harassment. Esser argues that the close proximity between her reporting the sexual harassment claims, as told to her by Gerdes, and her termination is sufficient to show causation.

As noted in [Jackson v. United Parcel Service, Inc., 548 F.3d 1137 (8th Cir. 2008)](#), when there is no direct evidence of retaliation, the burden-shifting analysis established in [McDonnell Douglas Corp. v. Green, 411 U.S.](#)

6

792 (1973) applies. Jackson, 548 F.3d at 1142 (citing Kasper v. Federated Mut. Ins. Co., 425 F.3d 496 502 (8th Cir. 2005)). Under this framework, "plaintiff first must demonstrate a prima facie case of retaliation to survive summary judgment." Id. (internal quotation and citation omitted). "To meet this burden, [the plaintiff] must show that '(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action.' " Id. (citation omitted).

After the prima facie case is established, "the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for their actions." Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973)). "This burden is one of production, not persuasion; it can involve no credibility assessment." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quotation and citation omitted). "If the employer successfully makes this showing, the burden shifts back to the plaintiff to show the employer's proffered reason was a pretext." Kasper, 425 F.3d at 502 (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) (analyzing the application of the McDonnell Douglas burden-

7

shifting analysis in the context of an age discrimination claim); see also McArdle v. Dell Prods. L.P., 293 Fed. Appx. 331, 339 (5th Cir. 2008) (unpublished opinion) (applying the reasoning in Reeves in a retaliation case).

Regarding Esser's prima facie case, defendants argue that there is no evidence supporting a causal connection between Esser's reporting of the sexual harassment complaint and her termination. Esser argues that there is sufficient evidence of causation because she was terminated within a week of when she reported the sexual harassment complaint involving Gerdes.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events." Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005). But "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (finding temporal proximity insufficient to create a material issue of fact when "intervening unprotected conduct eroded any causal connection that was suggested by the temporal proximity of [the claimant's] protected conduct and his termination").

In some cases, temporal proximity may be sufficient to demonstrate a prima facie case under McDonnell Douglas. See O'Bryan v. KTIV Television,

64 F.3d 1188, 1193-94 (8th Cir. 1995). Here, Esser's report of the sexual harassment claim involving Gerdes was almost immediately followed by her termination. This is sufficient to allow a jury to reasonably conclude that the cause of Esser's termination was the fact that she reported the sexual harassment claims that were made to her by the employees. The burden is then shifted to defendants to produce a legitimate reason for terminating Esser.

Scheel testified that he investigated the claims made by Esser and none of the employees corroborated Esser's reports.[2] (Docket 38-3, Ex. 2 at 8-10; Docket 36, at 6.) Scheel concluded that Esser falsely reported the sexual harassment claims, including the one involving Gerdes, and fired Esser for that reason.[3] (Docket 36, at 6.) Therefore, defendants have produced a legitimate reason for Esser's termination. "Thus, the inquiry now moves to the question of pretext–whether [the plaintiff] produced sufficient evidence that the proffered reason was not the true reason for [the defendant's] decision to terminate." Wheeler v. Aventis Pharmaceuticals, 360 F.3d 853 (8th Cir. 2004).

---

[2] Esser has not responded to the factual assertions in defendants' Statement of Material Facts that support this statement.

[3] Esser has not denied statement 38 in defendants' Statement of Material Facts that "based on the discrepancy between what Gerdes and Reiner told Scheel what happened, and what Plaintiff told Scheel what happened, Scheel terminated Plaintiff's employment." (Docket 36, at 6.)

9

"[A]n employer's deviation from its own policies can, in some instances, provide evidence of pretext." Russell v. TG Missouri Corp., 340 F.3d 735, 746 (8th Cir. 2003). Here, the employee handbook specifically states that an employee "Will Not Be Penalized For Reporting Harassment." (Docket 49-10, Ex. H at 3.) The employee handbook also states that,

> [i]f you think that something is wrong, are unsure what is proper conduct in a particular situation, or believe that another employee may have violated Texas Roadhouse policies, you have a duty to raise questions and report concerns immediately. No one may threaten you or take any action against you for raising questions or reporting concerns."

(Id.) Additionally, the handbook provides that, "[e]ven if there is insufficient evidence to prove that harassment occurred we will take action to protect employees against . . . any retaliation for reporting the harassment." (Id.) Finally, the handbook emphasizes that an employee does "not have to prove anything in order to be protected by this No Harassment Policy." (Id.) Thus, the employee handbook established that no proof was needed to report sexual harassment concerns. A jury could reasonably conclude that Texas Roadhouse deviated from its established procedures when it terminated Esser. Such deviation from the established policies is sufficient to demonstrate pretext. See Russell, 340 F.3d at 746.

Now the issue becomes whether Esser's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully"

retaliated against Esser because she reported the sexual harassment complaints that were reported to her. See Reeves, 530 U.S. at 148. The jury could reasonably find that Scheel's stated reason for Esser's termination was false and reasonably infer that the false reason demonstrates unlawful retaliation. Id. at 143 ("That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " (quoting Texas Dept. of Comty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

Viewing the facts in the light most favorable to Esser, a jury could reasonably conclude that she was the victim of retaliation for engaging in protected EEO activities because she was terminated almost immediately after she reported the sexual harassment complaints as was required by the employee handbook and because Texas Roadhouse deviated from its policy when it fired her after she reported the alleged sexual harassment. Thus, Texas Roadhouse's motion for summary judgment is denied with regard to Esser's retaliatory termination claims. See id.; Matter of Gannon, 315 N.W.2d 478, 481 (S.D. 1982) (applying the McDonnell Douglas framework with regard to a claim under the South Dakota Human Relations Act, SDCL 20-13-10).

## III.    Count 5: Intentional Infliction of Emotional Distress

Defendants argue that summary judgment is appropriate with regard to Esser's intentional infliction of emotional distress[4] claim because Esser's termination was not "extreme and outrageous." In order to establish a claim for intentional infliction of emotional distress, Esser must show: (1) an act by defendants amounting to extreme and outrageous conduct; (2) intent (or recklessness) on the part of defendants to cause Esser severe emotional distress; (3) defendants' conduct was the cause-in-fact of Esser's distress; and (4) Esser suffered an extreme disabling emotional response to defendants' conduct. [Reeves v. Reiman, 523 N.W.2d 78, 83 (S.D. 1994)](). In order for conduct to be considered "outrageous," the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community." [Harris v. Jefferson Partners, 653 N.W.2d 496, 500 (S.D. 2002)]() (internal quotation and citation omitted). Whether the conduct amounts to extreme and outrageous conduct is a "determination [that] is initially for the court." Id. at 28.

Esser's argument that it was outrageous for her to be terminated for doing her job by reporting the sexual harassment claims is misplaced

---

[4] Esser does not argue that Welder's alleged actions toward her or the employees provide a basis for her intentional infliction of emotional distress claim.

12

because it does not address Scheel's actual conduct during the termination. See Richardson v. E. River Elec. Power Co-op., Inc., 531 N.W.2d 23, 29 n.2 (S.D. 1995) (stating that neither the plaintiff's "employment history, nor [the employer's] thoughts or intent (the second element of an intentional infliction of emotional distress claim), factor into an examination of the actual conduct which must be extreme and outrageous"). Esser has not refuted the manner in which she was terminated, which involved her being terminated in a private setting by Scheel and being allowed to collect her personal belongings. There is no evidence of shouting, profanity, or other similar behavior by defendants. See id. (noting that there was "no evidence that voices were raised [or] profanity used"). "The conduct was civilized, if not particularly pleasant for" Esser. Id. at 29. Scheel's behavior during Esser's termination was not outrageous. Id. (recognizing that "a person whose employment is terminated by discharge will likely be upset, but . . . nothing in the conduct of the defendants [] rises to the level of extreme or outrageous conduct"). Accordingly, defendants' motion for summary judgment is granted as to the claim of intentional infliction of emotional distress.

## IV: Count 6: Negligent Infliction of Emotional Distress

A claim of negligent infliction of emotional distress includes: "(1) negligent conduct on the part of the defendant, (2) emotional distress suffered by the plaintiff, and (3) physical manifestations suffered by the plaintiff from the distress." Reynolds v. Ethicon Endo-Surgery, Inc., 454 F.3d 868, 874 (8th Cir. 2006) (citing Nelson v. WEB Water Dev. Ass'n, 507 N.W.2d 691 (S.D. 1993)). " 'The three necessary elements of actionable negligence are: (1) A duty on the part of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure.' " Id. at 874 (quoting Blaha v. Stuard, 640 N.W.2d 85, 90 (S.D. 2002)).

Defendants argue that summary judgment is appropriate because defendants owed no duty to Esser. Esser argues that defendants owed a duty not to terminate her because she was obligated to report any sexual harassment claims that were reported to her by the employees.[5]

As the Eighth Circuit Court of Appeals noted in Reynolds, "[i]n an employment-at-will state like South Dakota, the employer owes no duty of continued employment, and therefore may dismiss the employee at any

---

[5] Esser's claim of negligent emotional distress does not stem from Welder's alleged sexual harassment. Rather, the claim is premised on her allegation that she was terminated in retaliation for reporting the sexual harassment complaints she had received, and the resulting stress from her termination caused her headaches to become more frequent and severe.

14

time, for any reason, as long as an employment contract, a statute, or public policy does not indicate otherwise." Id. (citing Aberle v. City of Aberdeen, 718 N.W.2d 615, 621-622 (S.D. 2006); Hollander v. Douglas County, 620 N.W.2d 181, 185 (S.D. 2000)). Esser has failed to identify a contract, or cite any case law or statute, that supports her argument that defendants owed Esser a duty not to terminate her. Esser's reliance on the policy contained in the employee handbook that required employees to report sexual harassment is misplaced. As set forth in detail below, the employee handbook did not create a contract or change Esser's status as an at-will employee. Thus, defendants' motion for summary judgment is granted with regard to Esser's negligent infliction of emotional distress claim because she has failed to identify "an employment contract, statute, or public policy" that imposed a duty on defendants not to terminate her. Id.

**V:    Count 7: Breach of Contract**

Defendants argue that Esser's employment was "at-will" and therefore a breach of contract claim is unavailable. Esser argues that the employee handbook, which contained policies against retaliation for reporting sexual harassment, created an implied contract of employment.[6] Esser contends

---

[6] It is not entirely clear what "contract" Esser is arguing existed in this case. It appears that Esser may be arguing that a contract existed between the parties on the following basis: defendants promised not to retaliate against her for reporting claims of sexual harassment in exchange for Esser's promise to report all claims of sexual harassment. This cannot be the basis for the breach of contract claim, however, because defendants "promised" to refrain from

that the contract for employment was breached when she was allegedly dismissed in retaliation for reporting the sexual harassment complaints she received from employees.

The South Dakota Supreme Court has held that in order for an employer to surrender its statutory power to hire and fire at will, "the employer must affirmatively indicate its intent by adopting a personnel policy or manual explicitly providing that a for-cause termination procedure must be followed." Holland v. FEM Elec. Ass'n, Inc., 637 N.W.2d 717, 720 (S.D. 2001). The relevant language in the employee handbook does not explicitly establish a for-cause termination procedure.[7] Moreover, the

---

doing something that was already prohibited under Title VII and South Dakota law. The promise not to retaliate against the employees for reporting sexual harassment is not really a "promise" in the contractual sense because the law already prohibits such behavior. See 17A Am. Jur. 2d Contracts § 195 (1991) ("A promise to do that which the promisor is already legally bound to do, or the performance of an existing legal obligation, does not usually constitute consideration, or sufficient consideration, for a contract." (citations omitted)); Restatement (Second) of Contracts § 75 cmt. c ("A promise to perform a legal duty is not consideration for a return promise unless performance would be."). Thus, there could be no contract in this regard because there was no exchange of promises. Esser's breach of contract claim is, therefore, treated as being a breach of contract for employment.

[7] The language in the handbook identified by Esser is as follows:

If you see or experience harassment, you should immediately report the incident. Do not wait until the harassment affects your job or your work environment. Do not wait until you "cannot stand" the behavior. Your company's policy is to stop any harassment before it affects the employment or work environment of any employee. As with any other violation of company policy, all employees are expected to report any harassment that they

employee handbook specifically states that "[b]y accepting employment you therefore acknowledge that your employment is on an 'at will' basis unless the state law is different." (Docket 38-6, Ex. 5 at 7.) The handbook also states that "[n]o manager or representative of the Company other than the

---

> observe, whether or not the harassment is directed at them. The full cooperation of everyone is needed to keep our workplace free of harassment.
>
> **You Will Not Be Penalized For Reporting Harassment.**
>
> You must report any type of harassment or retaliation to the Legendary People Department at the Support Center in Louisville, KY.
>
> **Receipt of Employee Complaints/How to Report.**
>
> If you think that something is wrong, are unsure what is proper conduct in a particular situation or believe that another employee may have violated Texas Roadhouse policies, you have a duty to raise questions and report concerns immediately. No one may threaten you or take any action against you for raising questions or reporting concerns. Employees may raise general questions or concerns with their supervisor, the Legendary People Department or the Legal Department using any or all of the following methods[.] . . .
>
> Even if there is insufficient evidence to prove that harassment occurred we will take action to protect employees against any reoccurrence of the reported harassment, as well as against any retaliation for reporting the harassment.
>
> You do not have to prove anything in order to be protected by this No Harassment Policy.

(Docket 49-10, Ex. H at 3 (emphasis omitted).)

Chief Executive Officer or Chairman has any authority to enter into any agreement for employment for any specified period of time[.]" (Id.)

Esser contends that under Setliff v. Akins, 616 N.W.2d 878, 892 (S.D. 2000), there is a question of fact as to whether there was an implied contract that changed her status as an at-will employee. Setliff, however, is a case that deals with the terms of a contract after a definite contract had expired. Id. "Setliff is not relevant to determine whether or not [the defendant] has given up its status as an at-will employer." Johnson, 2007 WL 1231657, at 15. Esser's argument that the harassment policy set forth in the employee handbook changed her status as an at-will employee is not supported by the holding of the South Dakota Supreme Court.

The language identified by Esser in the employee handbook did not change Esser's status as an at-will employee. Furthermore, the handbook specifically said that an employee is hired as an at-will employee. Therefore, Esser's status as an employee at the Texas Roadhouse was at-will, and she could be terminated accordingly. Thus, defendants' motion for summary judgment is granted as to the breach of contract claim.

**VI:    Punitive Damages**

Defendants argue that summary judgment is appropriate with regard to the claim for punitive damages because the decision to terminate Esser was not accompanied with the requisite malice. See Case v. Murdock, 488

18

N.W.2d 885, 891 (S.D. 1992). Defendants also argue that there is no evidence showing that Esser's termination was the result of malice, or reckless indifference, to Esser's rights under Title VII or South Dakota law. See Rowe v. Hussmann Corp., 381 F.3d 775, 783-84 (2004). Esser has not responded to defendants' motion for summary judgment with regard to punitive damages. Thus, defendants' motion for summary judgment is granted with regard to the punitive damages claim.

## CONCLUSION

Defendants' motion for summary judgment is denied as to the state-law and federal retaliatory discharge claims against Texas Roadhouse and granted as to all of the other claims in the complaint against Texas Roadhouse and all of the claims against Welder. Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Docket 37) is granted in part and denied in part.

Dated January 27, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE